*DRAFT PROPOSED VERSION*

## BEVERAGE CONCESSION
## MANAGEMENT SERVICES AGREEMENT

This BEVERAGE CONCESSION MANAGEMENT SERVICES AGREEMENT (this "Agreement") effective _____ day of _____, 2024 (the "Effective Date") is made and entered into by and between Alamo Lake Highlands, a Delaware limited liability company ("Manager") and [DEBTOR NAME], a Texas limited liability company ("Permittee").

W I T N E S S E T H:

WHEREAS, Permittee, acting through its designated trustee, has filed Chapter 7 bankruptcy protection and desires to preserve its value for the benefit of its creditors;

WHEREAS, Manager has acquired the assets of Permittee through said bankruptcy proceeding used in the operation of the Alamo Drafthouse Cinema located at 6770 Abrams Rd., Dallas, TX 75231 (the "Facility");

WHEREAS, Permittee is the holder of certain permits issued by the Texas Alcoholic Beverage Commission (the "Commission"), which are active and in good standing with the State of Texas and bearing AIMS License # 105567126, authorizing the sale of beer, ale, wine, and distilled spirits (collectively, "Alcoholic Beverages") at the Facility;

WHEREAS, Manager desires to grant Permittee to operate and Permittee desires to operate a business for the retail sale of Alcoholic Beverages at the Facility until such time as Manager or its designee has obtained the licenses and/or permits required to sell Alcoholic Beverages there for its own account;

WHEREAS, Permittee desires to provide for the adequate management of its concession as well as for those services necessary and incidental to its business at the Facility and desires to contract with Manager for such purposes; and

WHEREAS, Manager has the personnel and service facilities necessary to provide efficient management of Permittee's concession and to provide such services as may be incidental or necessary thereto, and desires to provide such management and services to Permittee.

NOW, THEREFORE, for and in consideration of these premises and for other good and valuable consideration, it is agreed as follows:

1.      Agreement. Manager and Permittee agree the recitals listed above are true and accurate and Manager and Permittee hereby agree with one another to provide the services as set forth herein, on the terms and subject to the conditions as hereinafter set forth.

2.      Grant of Concession; Access to Facility. Manager hereby grants to Permittee, and Permittee does hereby accept from Manager, those certain rights and privileges giving rise to a concession to sell Permittee's Alcoholic Beverages at the Facility (the "Concession"), subject to the terms and conditions of this Agreement. Manager shall provide Permittee with access to the Facility, all personnel, equipment and facilities in order for Permittee to maintain,

**EXHIBIT C**
**Page 1 of 15**

operate and conduct the Concession. Manager shall give to Permittee control of the sale of Alcoholic Beverages. Permittee renounces, disclaims and denies any right, title, or interest in and to the improvements, machinery, equipment and fixtures situated in the Facility, other than the right to use such improvements, machinery, equipment and fixtures to the extent necessary for the conduct of the Concession.

3.    <u>Responsibility for Operations</u>.    Permittee    shall    have    the    following responsibilities, rights, duties and obligations:

(A)    Permittee shall conduct the Concession in compliance with all applicable federal, state or local laws relating to the sale of the Alcoholic Beverages, including, but not limited to, the Texas Alcoholic Beverage Code (the "<u>Code</u>") and the rules promulgated by the Commission thereunder (the "<u>Rules</u>").

(B)    Permittee shall bear all costs and expenses of maintaining all necessary permits and licenses to operate the Concession at the Facility during the term hereof, <u>provided</u>, <u>however</u>, that such costs and expenses shall be paid for solely from revenue generated from the Concession.

(C)    Permittee shall have authority with respect to the purchase and sale of all Alcoholic Beverages at the Facility and transportation of all Alcoholic Beverages to the Facility.

(D)    Permittee shall not interfere with the non-Alcoholic Beverage operations of Manager at the Facility.

(E)    Permittee shall (i) submit or cause to be submitted its alcoholic beverage permits for the Facility to the Commission upon receipt of notice from Manager that the Commission is prepared to accept its permits for surrender in accordance with Manager's instructions .

4.    <u>Duties of Manager</u>.

(A)    At Permittee's direction, Manager agrees to perform such management functions and services as are reasonable or necessary for the good and efficient management of Permittee's Concession at the Facility.

(B)    Manager, for the account, and at the direction, of Permittee, shall manage the Concession at the Facility, including, but not limited to, inventory management, storage, pricing, and sale of Alcoholic Beverages, and the collection of all sales tax due thereon.

(C)     Manager shall maintain separate and complete books of account for Permittee with correct entries for all receipts and expenditures of any form or manner and located at such place as required by law and as designated by Permittee. Permittee shall be the owner of such books of account, and such books of account shall be open to inspection by Permittee or Permittee's designee at any reasonable time after notification to inspect has been given by Permittee to Manager.

(D)     Manager shall prepare and timely submit, from time to time, on Permittee's behalf such reports, returns, notices or other filings (collectively, "Reports") as may be (i) reasonable, necessary, proper or ordinary in, (ii) required by any governmental permit issued to Permittee for, and/or (iii) required by any contract or agreement to which Permittee is a party with respect to, the operation of Permittee's Concession at the Facility during the term of this Agreement. Manager shall have no obligation in the preparation or filing of Reports concerning Permittee's operations at the Facility other than as set forth in the last sentence hereof. In the event that the Effective Date is other than the first day of a month, Permittee agrees (i) to provide Manager with all information concerning Permittee's sales and service of Alcoholic Beverages during that month prior to the Effective Date and (ii) to deliver to Manager funds equal to Permittee's liability for (a) Mixed Beverage Gross Receipts Tax due from the sale of Alcoholic Beverages, (b) Use Tax due from the delivery of complimentary Alcoholic Beverages, and (c) Mixed Beverage Sales Tax collected from its customers during said month to Manager by the tenth (10th) of the following month to allow Manager to incorporate this information and these funds into Permittee's Mixed Beverage Gross Receipts Tax Return, its Use Tax Return (if any) and its Mixed Beverage Sales Tax Return due for said month. Terms in this subsection that are not defined shall have the meaning generally used and attributable to such terms in the Code.

(E)     Manager shall receive and hold in trust as the sole property of Permittee all monies and income received from or in connection with the Concession of Permittee conducted at the Facility, depositing the same as often as practicable, but no less often than once per month, in such segregated bank account as shall be designated by Permittee after consulting with Manager (the "Concession Accounts"). Manager shall pay all reasonable expenses incurred on behalf of Permittee in its management of the Concession as same become due and payable from funds deposited into such bank accounts. Such expenses shall not include any fines or penalties levied by any governmental authority having jurisdiction over the operation of the Concession arising as a consequence of Manager's actions hereunder, payment of which shall remain Manager's sole responsibility.

(F)     Manager, as needed upon direction from Permittee, shall hire, fire, and supervise any and all personnel as may be qualified and necessary for the efficient and economic operation of Permittee's business and discharge such employee or employees as should be discharged. All persons involved in the sale of alcoholic beverages in the Concession shall hold a currently-effective certificate issued by the Commission evidencing such person's successful completion of a Commission-certified Seller Training Program in accordance with the provisions of Section 106.14 of the Code and the Rules. Manager agrees that it will (a) require its employees and agents to abide by Manager's alcoholic beverage policies and procedures, which shall include employees and agents abiding by commercially reasonable practices and (b) comply with all other applicable provisions of the Code and Rules to ensure that Permittee is at

all times in full compliance with the requirements of the Code and the Rules to obtain the benefits afforded under Section 106.14, as same may be amended from time to time.

(G)     During the term of this Agreement, Manager shall also obtain and maintain liability insurance which includes coverage against liability arising out of the Alcoholic Beverage operations conducted at the Facility (including "dram-shop liability"), as follows:

| | |
|---|---|
| Comprehensive General Liability | $1,000,000 |
| Excess Liability | $1,000,000 |

All such policies shall cover all claims arising during the term of this Agreement, regardless of when such claims are made or brought. Permittee shall bear its share of the costs of all such policies in accordance with Section 5. Any policy providing for such insurance shall name Permittee as an additional named insured and shall not be amended.

(H)     MANAGER AND FRANCHISEE ENTITY SHALL HOLD PERMITTEE AND PERMITTEE'S OFFICERS, MANAGERS, EMPLOYEES, REPRESENTATIVES, AGENTS AND MEMBERS (COLLECTIVELY, "INDEMNITEES") HARMLESS AND INDEMNIFY AND DEFEND INDEMNITEES FROM AND AGAINST ANY AND ALL CLAIMS, INCLUDING CLAIMS OF ANY EMPLOYEES FOR ANY WAGES, BONUSES, SEVERANCE, BENEFITS OR PERSONAL INJURIES THAT WOULD OTHERWISE BE COMPENSABLE UNDER THE TEXAS WORKER'S COMPENSATION STATUTES, DEMANDS, CAUSES OF ACTION, FINES, PENALTIES, LOSSES AND LIABILITIES OF WHATEVER KIND WHICH ARISE OUT OF OR RELATE TO THE SERVICE OF ALCOHOLIC BEVERAGES AT THE FACILITY. NOTWITHSTANDING ANYTHING CONTAINED HEREIN TO THE CONTRARY, THE FOREGOING INDEMNITY SHALL NOT APPLY TO MATTERS ARISING IN CONNECTION WITH THE GROSS NEGLIGENCE, ILLEGAL ACTS, FRAUD, INTENTIONAL MISCONDUCT OR BAD FAITH CONDUCT OF INDEMNITEES OR WILLFUL BREACH OF THIS AGREEMENT BY INDEMNITEES. THE OBLIGATIONS OF MANAGER UNDER THIS SUBSECTION (H) ARE EXPRESSLY AGREED TO SURVIVE THE EXPIRATION OR TERMINATION OF THIS AGREEMENT.

(I)     Manager and Permittee shall perform all of its obligations under this Agreement in compliance with all applicable federal, state, or local laws relating to the service and sale of Alcoholic Beverages, including, but not limited to, the Code.

(J)     Manager shall pay for Permittee's account all expenses (other than those paid directly by Permittee) incurred in the normal course of business of the Concession. Permittee hereby consents to the payment of such expenses from the Concession Account and shall authorize Manager to deposit and withdraw funds from the Concession Account in accordance with the terms of this Agreement. Manager shall look to revenue derived from the sale of Alcoholic Beverages hereunder for the payment of all such expenses and Permittee shall

have no further liability for any such expense.

(K)     Services that are to be provided by Manager under this Agreement may be provided by an affiliate of Manager; provided that Manager shall remain fully liable to Permittee for the performance of any such service.

5.     Allocation of Shared Expenses. Permittee and Manager agree to prorate all shared costs and expenses for any expenses arising from common business operations at the Facility. Therefore, the parties agree that to the extent that there are (i) any employees of either Manager or Permittee that are shared in the business operations of either Manager or Permittee which partially arise out of or are partially incurred in connection with the other party's business operations at the Facility or (ii) any expenses incurred by either Manager or by Permittee which partially arise out of or are partially incurred in connection with the other party's business operations at the Facility, then all salaries, fees, costs and other expenses for such shared employees, and all such shared expenses, shall  be prorated between Permittee and Manager based upon a fraction, (i) the numerator of which is Permittee's Gross Receipts (as hereinafter defined) and (ii) the denominator of which is the sum of the Gross Facility Sales (as herein after defined) plus Permittee's Gross Receipts. Manager may reimburse itself for payment of any common expenses that it has paid on Permittee's behalf from the Concession Account.

The term "Permittee's Gross Receipts" as used herein shall mean the total amount of all amounts received by Permittee from the sale of Alcoholic Beverages at the Facility pursuant to this Agreement, whether such sales be evidenced by cash, check, credit, charge account, exchange, or otherwise. Permittee's Gross Receipts shall not include the amount of any city, county, state, or federal sales or other taxes or tariffs that are collected from the consumer and remitted by Permittee directly or indirectly to the appropriate governmental authority on the consumer's behalf.

The term "Gross Facility Sales" as used herein shall mean all gross receipts received by Manager from whatever source and in whatever form and manner received from the conduct and operation of Manager's non-alcoholic beverage operation in, on, or from the Facility, whether such gross receipts were represented by actual cash or by credit or by property or by other value. The term "Gross Facility Sales" shall not, however, be deemed to include the management fee paid by Permittee to Manager under Section 8.

6.     Control Over Management; Inventory Determination.

(A)     Any and all management or supervisory functions herein agreed to be performed by Manager for Permittee may be performed by Manager, its agents, servants or employees.

(B)     The parties agree that they will together take an inventory of Permittee's Alcoholic Beverages on hand at the Facility as of the Effective Date.

7.      <u>Term and Termination</u>.

(A)     The term of this Agreement shall expire automatically and without action required by any Party upon the earlier of (i) the date of issuance by the Commission of all permits necessary to authorize the sale of Alcoholic Beverages at the Facility by Manager or its designee and (ii) the date the Commission denies without allowing Manager to reapply for permits necessary to authorize the sale of Alcoholic Beverages at the Facility by Manager or its designee or Manager withdraws the application without intent to reapply for permits necessary to authorize the sale of Alcoholic Beverages at the Facility by Manager or its designee.

(B)     The parties agree monetary damages would be an insufficient remedy for a breach of this Agreement and the non-breaching party is entitled to specific performance in the event of a breach.  Notwithstanding the foregoing, in the event either party breaches a provision of this Agreement, the non-defaulting party may elect to terminate this Agreement by giving five (5) days written notice to the defaulting party. If the default is not remedied prior to the proposed termination date or the breaching party fails to make reasonable efforts to remedy such default, this Agreement shall terminate according to the terms of the notice of default. Notwithstanding the foregoing, if the defaulting party shall have commenced reasonable efforts to remedy such default and such remedy shall not have been completed prior to the end of the 5-day notice period, such  party shall have an additional five (5) days to complete such remedy.

(C)     Upon termination of this Agreement for any reason, including pursuant to Section 7(A)(i) hereof, Permittee agrees to transfer its inventory of Alcoholic Beverages at the Facility to the new permit-holder and to cooperate with the transferee in the preparation and timely filing of notice of such transfer as required by the Code and the Rules.

(D)     Upon termination of this Agreement for any reason, including pursuant to Section 7(A)(i) hereof, after payment of all expenses as provided herein by Manager. Permittee agrees to transfer the remaining balance of the Concession Account and any other funds held in relation to the operation of the Concession to the Manager or its designee.

8.      <u>Compensation</u>. In consideration of the rights in the Concession granted, and the management and services to be provided by Manager hereunder, but subject in all respects to Section 7(D), Permittee shall pay to Manager a management fee equal to ten percent (10%) of the Permittee's Gross Receipts (as defined above) from Alcoholic Beverage sales of Permittee at the Facility pursuant to this Agreement, payable monthly in arrears, within twenty (20) days after the end of each complete calendar month. Permittee shall, at reasonable times and at its own expense, have the right to inspect the records of Alcoholic Beverage sales of Manager  and/or prepared by Manager. Except as otherwise required by judicial proceeding, Permittee agrees to hold in confidence and not release to any party any information regarding all sales figures and other information obtained from Manager's records.

9.      <u>Alterations, Additions or Improvements</u>. Permittee shall not make any alterations, additions or improvements on or to the Facility without first obtaining the written consent of Manager. All alterations, additions and improvements shall be at the sole expense of Manager, shall become the property of Manager and shall remain at the Facility as a part thereof at the termination of this Agreement.

10.      <u>Liability of Permittee</u>. Permittee shall have no liability whatsoever for any consequential, incidental, parties' exemplary damages or any other damages incurred by Manager whatsoever under this Agreement, except to the extent that such damages arise out of and are directly attributable to the gross negligence, intentional misconduct, illegal acts, fraud, bad faith conduct of Permittee or the willful breach of this Agreement by Permittee.

11.      <u>Miscellaneous</u>.

(A)      <u>Notices</u>. All notices, requests, demands, and other communications hereunder, and each other agreement required to be entered into pursuant to the terms and conditions of this Agreement, shall be in writing and shall be deemed to have been duly given when actually received, or when mailed, first class postage prepaid, certified mail, return receipt requested, to the parties at the addresses set forth below, or to such other address as may be designated hereafter by prior written notice from the recipient to the sender:

If to Manager:          [DEBTOR NAME]
                        Attn:

                        _____
                        _____


If to Permittee:        Alamo Lake Highlands, LLC
                        Attn:

                        _____
                        _____


(B)      <u>Amendment</u>. No amendment or modification to this Agreement shall be made without the written agreement of all of the parties to this Agreement.

(C)      <u>Gender</u>. Wherever herein the singular number is used, the same shall include the plural, and the masculine gender shall include the feminine and neuter genders, and vice versa, as the content may require.

(D)      <u>Headings</u>. The headings contained in this Agreement are for reference purposes only and shall not in any way affect their meaning or interpretation.

(E)    <u>Counterparts</u>. This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument.

(F)    <u>Parties in Interest</u>. This Agreement shall inure to the benefit of and be binding upon the parties hereto and their respective heirs, executors, legal representatives, successors, and assigns. Notwithstanding anything to the contrary set forth in this Agreement, the parties hereto shall have no right to transfer or assign any of their rights or obligations under this Agreement voluntarily, by operation of law or otherwise, without the prior written consent of the other party.

(G)    <u>Transfer of Beverage Permits</u>. Nothing contained in this Agreement is intended to or shall result in a transfer of Permittee's alcoholic beverage permits and/or the control thereof to Manager during the term of this Agreement.

(H)    <u>Entire Agreement</u>. This Agreement embodies the entire agreement and understanding between the parties hereto, and supersedes all prior agreements and understandings, written and oral, relating to the subject matter thereof.

(I)    <u>Governing Law</u>. This Agreement, being in the State of Texas, then the laws of the State of Texas shall govern the validity, interpretation and enforcement of this Agreement.

(J)    <u>Language</u>. The language used in this Agreement shall be deemed to be language chosen by the parties hereto to express their mutual intent, and no rule of strict construction against any party shall apply to any term or condition hereof.

(K)    <u>Severability</u>. The provisions of this Agreement are severable and the invalidity and unenforceability of any provision hereof shall not affect the validity or enforceability of any other provision. In addition, in the event that any provision of this Agreement (or portion thereof) is determined by a court or administrative agency to be unenforceable as drafted by virtue of the scope, duration, extent or character of any obligation contained therein, the parties acknowledge that it is their intention that such provision (or portion thereof) shall be construed in a manner designed to effectuate the purposes of such provision to the maximum extent enforceable under applicable law.

(L)    <u>Cooperation</u>. Permittee and Manager shall cooperate in obtaining all necessary licenses and permits as may be required for the operation of the Facility.

(M)    <u>Waiver</u>. Any waiver or breach of the covenants herein contained to be kept and performed by either party hereto shall not be deemed or considered as a continuing waiver and shall not operate to bar or prevent the other party hereto from declaring a forfeiture, termination, or cancellation for any succeeding breach either of the same conditions or covenant

or otherwise. Acceptance of any payment required hereunder shall not be deemed a waiver.

(N)    <u>Force Majeure</u>. Neither party shall be liable for any delay or failure to perform its obligations hereunder due to any causes beyond its reasonable control including, without limitation, fire, accident, act of public enemy, war, rebellion, insurrection, sabotage, transportation delay, labor dispute, shortage of material, labor, energy or machinery, or act of God, act of government or the judiciary.

(O)    <u>Intent of Parties; Agreement to Amend</u>. The parties recognize that the Code requires that Permittee maintain exclusive occupancy and control of the Facility with respect to the purchase, storage, distribution, possession, and transportation and sale of Alcoholic Beverages there and affirm their intent and belief that the terms of this Agreement reserves those rights to Permittee. In the event that Permittee learns that any provision herein violates that requirement, whether by notice from the Commission or otherwise, the parties agree to promptly amend this Agreement to the extent required to assure that Permittee retains such occupancy and control.

*[Signature Page Follows]*

IN WITNESS WHEREOF, the parties have caused this Agreement to be executed as of the day and year first above written.

MANAGER:          Alamo Lake Highlands, LLC


_____
By:
Name:
Title:


PERMITTEE:          [DEBTOR NAME]


_____
By:
Name:
Title:

**DRAFT PROPOSED VERSION**

## INTERIM BEVERAGE MANAGEMENT AGREEMENT

This Interim Beverage Management Agreement ("Agreement") is made and entered into as of the ___ day of _____, 2024 by and among Alamo Intermediate II Holdings, LLC a Delaware limited liability company ("Owner"), Woodbury Alamo LLC, dba Alamo Drafthouse Cinema, a Texas limited liability company ("Licensee"), Rod Newhouse, an individual ("Trustee"), and Alamo Woodbury LLC, a Delaware limited liability company ("Manager").

WHEREAS, on or around the date hereof, and pursuant to ongoing Chapter 7 Bankruptcy proceedings of Licensee, (the "Bankruptcy") Owner has acquired title to the assets for the premises commonly known as Alamo Drafthouse Cinema located at 9060 Hudson Road, Woodbury, Minnesota 55125 (the "Cinema"); and

WHEREAS, Trustee has been designated in the Bankruptcy to serve as trustee and concurrently granted all rights and privileges to the operations and disposition of Licensee's interest in the Cinema, and, as such is executing this Agreement as authorized by the Bankruptcy; and

WHEREAS, in connection with such acquisition, Owner wishes to engage Manager to manage the Cinema; and

WHEREAS, Licensee is the current holder and licensee under (a) that certain Liquor Intoxicating On-Sale License issued by the City of Woodbury Business Licensing Division, identified as IDEN 69396 in state records, and (b) that certain Permit Numbers 28167 and 34309 issued by the State of Minnesota [Division of Public Safety Alcohol and Gambling Enforcement Division] (together, the "Existing License") for the Cinema; and

WHEREAS, the parties to this Agreement desire to cooperate in making certain that the management of the Cinema continues in a professional and orderly fashion during the transition and acquisition of liquor and various other licenses necessary to operate the Cinema by Manager (all liquor licenses necessary for the sale of alcoholic beverages at the Cinema to be obtained by Manager shall hereinafter be referred to as the "New License"); and

WHEREAS, Owner desires Licensee to continue to provide alcoholic beverage sales and service within the Cinema (the "Beverage Operations") under the Existing License until the New License has issued to Manager;

NOW, THEREFORE, for and in consideration of the sum of $10.00, the mutual covenants herein contained and other good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the parties agree as follows:

1. <u>Authority and Duties</u>.

    (a)    Manager will, on behalf of Licensee and/or Trustee, perform or cause to be performed, all duties required or desirable with respect to the Beverage Operations to maintain the Cinema in compliance with the laws and regulations of the State of Minnesota and the City of Woodbury, which duties shall include,

**EXHIBIT C**
**Page 11 of 15**

but not be limited to, the supervision and arrangement for the employment of a sufficient number of adequately trained staff; Licensee and/or Trustee grants Manager the authority, subject to the terms herein, to make all purchases necessary for the Beverage Operations, except that all liquor, wine and beer purchases must and shall be made by or at the direction of Licensee and/or Trustee under the Existing License and in Licensee's name.

(b)    During the term of this Agreement, Manager agrees that Licensee and/or Trustee shall have the right to supervise all activities of Manager until such time as the New License is issued to Manager.

(c)    Manager shall arrange for the employment, direction, control and discharge, as the case may be, of all personnel employed in the Beverage Operations. Manager shall not knowingly employ any person who is disqualified from being employed on an alcoholic beverage licensed premises.  All such employees shall be employees of Manager and not of Licensee or Trustee.

(d)    Manager shall arrange for the keeping of full and adequate books of account and other records reflecting the Beverage Operations, which it shall make available to Licensee and/or Trustee  for inspection at the request of Licensee and/or Trustee.

(e)    Manager shall exercise all commercially reasonable efforts to keep the Existing License in full force and effect throughout the Term of this Agreement, and Licensee and Trustee shall cooperate with Manager and exercise all commercially reasonable efforts in that regard, including taking all commercially reasonable steps necessary to retain the existing license.

2.    <u>Costs and Expenses</u>.  Commencing on the date hereof, Manager shall be responsible for all costs and expenses associated with maintaining the Existing License and Licensee and Trustee shall cooperate with Manager and its representatives, at the cost and expense of Manager, in maintaining the Existing License for the Cinema during the term of this Agreement.

3.    <u>License Issuance</u>. Manager shall file the necessary forms, applications and documents (collectively, the "Application") to obtain the issuance of New License to Manager within thirty (30) days after approval of this Agreement by the City of Woodbury City Clerk. Manager shall be responsible for all fees and costs associated with the completion and processing of the Application. Licensee and Trustee will cooperate with Manager and its representatives, at the sole cost and expense of Manager, to obtain approval of the Application and the issuance of the New License (the date of issuance being hereinafter referred to as the "New License Date") so long as Licensee and/or Trustee incurs no personal obligation to pay or perform any obligation except for performance of obligations that are necessary or desirable for the approval of the Application, the issuance of the New License or as otherwise contemplated herein, including, without limitation,

the execution and delivery of such additional documents as shall be required by the State of Minnesota [Division of Public Safety Alcohol and Gambling Enforcement Division] or the City of Woodbury [Business Licensing Division] from time to time.

4.   <u>Indemnification</u>.  Owner and Manager hereby agree to indemnify, defend and hold harmless Licensee and Trustee, from any claims, losses, damages, fines, penalties, reasonable expenses (including reasonable attorneys' fees), judgments or any other liabilities whatsoever arising out of or incident to the Existing License and the Beverage Operations at the Cinema arising from and after the date hereof, including, without limitation, any liabilities to the State of Minnesota or the City of Woodbury arising out of any violation by Manager or any of its members, managers, officers, agents, or employees of the terms and provisions of the Existing License and the requirements of the State of Minnesota and the City of Woodbury which occur during the term of this Agreement, except to the extent arising from the gross negligence or intentional misconduct of Licensee or Trustee or its employees or representatives. During the term of this Agreement, the parties hereto shall promptly deliver copies of any material notices to the other party hereto concerning the Existing License, the Application and the issuance of the New License.  The provisions of this Section 4 shall survive the termination or expiration of this Agreement with respect to the acts, omissions and occurrences arising during the term of this Agreement, subject to the effect of any applicable statute of limitations.

5.   <u>Compliance with Laws, Liens and Encumbrances</u>.  During the term of this Agreement, Manager shall (a) comply with all applicable federal, state and local laws, ordinances, codes, rules and regulations (collectively, "Laws") in connection with the Existing License, (b) keep and maintain the Existing License free and clear of all liens and encumbrances including, without limitation, any lien or encumbrance relating to claims made or liabilities due and payable to the State of Minnesota, (c) not cancel or allow the cancellation or revocation of the Existing License and (d) not pledge, encumber, or grant any lien or security interest in the Existing License.  During the term of this Agreement, Manager shall be responsible for all expenses associated with the use and preservation of the Existing License, the expense for which shall be paid from the revenues and receipts received from the Beverage Operations.  Licensee and Trustee shall also cooperate in good faith, but without being required to spend money or incur liability, with Manager and any representatives of Manager (i) to accomplish the issuance of the New License for the Cinema to Manager, (ii) to maintain the Existing License for the Cinema during the term of this Agreement, and (iii) to ensure that there is no cessation of operation pending issuance of the New license to Manager.  During the term of this Agreement, neither Licensee  nor Trustee shall (A) assign the Existing License to any other party, (B) voluntarily relinquish the Existing License (except as may be required by any governmental authority), or (C) take or fail to take any action in the ordinary course of business that would cause a suspension, revocation or termination of the Existing License during the term of this Agreement and prior to the anticipated expiration of the Existing License.

6.   <u>Insurance</u>.  During the term of this Agreement, Licensee and/or Trustee shall maintain or cause to be maintained, at Owner's sole cost and expense, policies in Licensee's name of liquor liability insurance issued by and binding upon an insurance company authorized to transact

3

**EXHIBIT C**
**Page 13 of 15**

business in the State of Minnesota, such insurance to afford minimum protection of not less than $1,000,000 combined single limit for each occurrence and $2,000,000 for the aggregate of all occurrences within each policy year, with umbrella liability coverage of $50,000,000. The insurance required to be maintained by Licensee and/or Trustee hereunder shall name Owner, Manager and the City of Woodbury as additional insureds. Evidence of the policies of insurance required to be maintained by Licensee and/or Trustee hereunder shall be furnished to the City of Woodbury, Owner and Manager within a reasonable time after the signing of this Agreement.

7. <u>Remedies</u>. Upon the failure of any party hereto to remedy any breach of its obligations hereunder within five (5) days after written notice (an "Event of Default"), and in addition to any rights and remedies available to the non-defaulting party hereunder, at law or in equity, the non-defaulting party may terminate this Agreement upon written notice to the other party and all obligations hereunder shall cease. In any judicial proceeding in which the validity of termination of this Agreement is at issue, neither party will be limited to the reasons for default set forth in any notice sent pursuant to this Agreement.

8. <u>Independent Contractor</u>. Licensee and Manager are independent contractors and neither party may bind the other or shall be liable for the acts of the other party except as expressly set forth herein.

9. <u>Term of Agreement</u>. This Agreement shall commence on the date hereof and shall expire upon the earlier to occur of (i) the New License Date, or (ii) one hundred and fifty (150) days from the date hereof.

10. <u>Notices</u>. Any notice, statement or demand required to be given under this Agreement shall be in writing and shall be deemed to have been given if delivered personally or upon receipt by overnight courier or by registered or certified mail, return receipt requested, address, if to Owner or Manager at 3908 Avenue B, Austin, Texas 78751, and if to Licensee, it shall be sent the address of Trustee's attorney at Lyndell Ann Vargas, Cavazos Hendricks Poirot, P.C., Founders Square, Suite 570, 900 Jackson Street, Dallas, Texas 75020-4425, or to such other addresses as Owner, Licensee, Trustee or Manager shall designate in the manner herein provided.

11. <u>Miscellaneous</u>. This Agreement may be signed in one or more counterparts and/or by facsimile or e-mail or PDF signature, all of which shall collectively constitute a single agreement. Section headings used in this Agreement are inserted only for reference and are in no way to be construed as a limitation on the scope of the particular provision to which they refer. This Agreement shall be governed by, interpreted under, construed and enforced in accordance with the laws of the State of Minnesota. This Agreement is subject to the approval by the City of Woodbury City Clerk. If any of the phrases, sentences, clauses or paragraphs contained in this Agreement shall be declared invalid by the final and unacceptable order, decree or judgment of any court, this Agreement shall be construed as if such phrases, sentences, clauses or paragraphs had not been inserted. This Agreement may not be changed, modified or amended except by a writing signed by all parties hereto. This Agreements shall be binding upon and shall inure to the benefit of the

4

**EXHIBIT C**
**Page 14 of 15**

parties hereto and their successors and assigns.  Any notice, statement or demand required to be given hereunder shall be in writing and shall be deemed to have been given if delivered personally or delivered by reputable overnight delivery service or certified or registered mail, return receipt requested, to the addresses set forth on the signature page below.  Time is of the essence with respect to each and every provision of this Agreement.

12. <u>Owner's Authorization and Consent</u>.   Owner hereby authorizes Licensee and/or Trustee to continue to manage Beverage Operations for the Cinema and consents to Licensee's appointment of Manager as the sole and exclusive interim manager of the Beverage Operations.

13. <u>Counterparts</u>.  This Agreement may be executed in any number of counterparts, each of which shall be an original, but all of which together shall constitute one instrument, and in pleading or proving any provision of this Agreement, it shall not be necessary to produce more than one of such counterparts.

IN WITNESS WHEREOF, Owner, Licensee, Trustee, and Manager have duly executed this Agreement as of the date and year first written above.

**Owner:**

By:_____
   Name: _____
   Title:  Manager

**Licensee:**

By: _____
Name:_____
Its: _____

**Trustee:**

By: _____
Name:_____

**Manager:**

By: _____
Name:_____
Its: _____

5

**EXHIBIT C**
**Page 15 of 15**